1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                    EASTERN DISTRICT OF CALIFORNIA
9

10   JESUS ALBIZU,                    ) CV F 02-5875 AWI SMS
                                      )
11              Plaintiff,            ) ORDER DEEMING DEFENDANTS' MOTION
                                      ) TO SET ASIDE DEFAULT AND DEFAULT
12      v.                            ) JUDGMENT TO BE MOTION TO SET
                                      ) ASIDE DEFAULT (DOC. 93)
13                                    )
     CLYDE A. STROHL, et al.,         ) ORDER GRANTING PLAINTIFF'S
14                                    ) REQUEST TO TAKE JUDICIAL NOTICE
                Defendants.           ) (DOC. 99)
15                                    )
     _____ ) ORDER GRANTING DEFENDANTS'
16                                      REQUEST TO TAKE JUDICIAL NOTICE
                                        (DOC. 104)
17
18                                      ORDER DENYING DEFENDANTS' MOTION
                                        TO STRIKE THE DECLARATION OF
19                                      DROBNY (DOC. 102)

20                                      ORDER DENYING MOTION TO SET ASIDE
                                        DEFAULT OF DEFENDANTS WESLEY E.
21                                      AMUNDSON AND AMUNDSON &
                                        ASSOCIATES (DOC. 93)
22
                                        ORDER SETTING AND DIRECTING THE
23                                      PARTIES TO PARTICIPATE IN A
                                        TELEPHONIC STATUS CONFERENCE
24                                      **Date: August 3, 2005**
                                        **Time: 10:00 a.m.**
25

26      I. Background

27      Plaintiff is proceeding with an action commenced on July 19,

28   2002, by the filing of a verified complaint alleging 1) a RICO

1

claim in violation of 18 U.S.C. § 1962 (prohibiting specified activities in the investment of income derived from a pattern of racketeering activity or through collection of an unlawful debt) premised upon wire fraud and mail fraud via misrepresentation regarding an investment of $102,000.00 made by Plaintiff in Defendants' firm (seventh claim); and 2) pendent state claims for intentional and negligent misrepresentation, making a promise without intent to perform, breach of contract, conversion, and breach of fiduciary duty (first through sixth claims).

The proofs of service filed on August 27, 2002, reveal that summons and complaint were served personally on Defendant Wesley E. Amundson (Amundson) on Friday, August 9, 2002, at 7030 Monza Place, Alta Loma, California, by a registered California process server; service upon Defendant Amundson and Associates (A&A) was likewise effected by service upon Wesley Amundson, as authorized to accept service, at the same date and time by the same registered server. Amundson admitted service upon him and upon A&A as of July 19, 2002. (Decl filed March 18, 2005 at ¶ 2.)

Plaintiff's request for entry of default against Defendants Amundson, filed September 9, 2002, is not accompanied by a proof of service on Defendants. However, the Clerk's entry of default upon Defendants Amundson was dated September 11, 2002, and was served by mail by the Clerk on Amundson and A&A at 7030 Monza Place, Alta Loma, CA 91701.

On November 6, 2002, Defendant Strohl filed an answer as proceeding pro se. His earlier answer was unintelligible, indicated that his counsel was McCormick Barstow (Plaintiff's counsel), and was not served. His answers were stricken by the

1  Court on November 12, 2002.

2      On December 4, 2002, the defaults of Defendants Clyde A.

3  Strohl and Strohl's Financial Services, Inc., were entered.

4  Notice of this was not served on Defendants Amundson.

5      Plaintiff's motion for entry of default judgment against all

6  Defendants, including Defendants Amundson, filed by Plaintiff on

7  March 6, 2003, was served on Defendants Amundson at the Monza

8  Place address on March 6, 2003 by overnight mail. The

9  application, signed by Kurt F. Vote and submitted in connection

10  with the motion, recited all Defendants' failure to respond to

11  the complaint, including the striking of Defendant Strohl's

12  answer, and the failure of Defendants Amundson to respond to the

13  complaint.

14      Defendant Strohl filed a motion to set aside his default.

15  Defendant Strohl's first motion to set aside default, which was

16  filed by Henry Nunez on March 14, 2003 for Defendant Clyde

17  Strohl, indicated that Nunez was Strohl's attorney, but it did

18  not indicate that he was acting on behalf of Defendants Amundson;

19  it was not served by Nunez on Defendants Amundson, according to

20  the proof of service. However, Plaintiff's memorandum, case

21  appendix, and request for judicial notice submitted in opposition

22  to the motion, filed on April 4, 2003, were served on Defendants

23  Amundson by overnight mail dated the same date. These documents

24  detailed the progress of the case, including meeting and

25  conferring to prepare a joint scheduling report.

26      The bankruptcy court's order granting relief from the

27  automatic bankruptcy stay, filed on June 9, 2003, and referring

28  to a hearing held on May 29, 2003, was served on the Strohl and

Amundson Defendants at their respective addresses. This order detailed all the proceedings in this action between August 28, 2002, and April 18, 2003--all proceedings which were released from the effect of the automatic bankruptcy stay.

On September 3, 2003, Defendant Clyde A. Strohl filed in this Court a notice of reopening a Chapter 7 proceeding, Case No. 01-15866-7, and invoking an automatic stay pursuant to 11 U.S.C. § 362(a).

On September 4, 2003, the Court ordered the case statistically closed because of the pendency of a bankruptcy proceeding, and directed the parties to submit a request to re-open case and set scheduling conference should counsel desire to reopen the case. The order was served on counsel and on Defendant Strohl.

Plaintiff then moved for leave to file an amended complaint in October 2003. These papers were served on Defendants Amundson at the Monza Place address.[1]

In January 2004, Plaintiff sought to reopen the case as to Defendants Amundson, as to whom the case was not stayed. These papers were served on Defendants Amundson at the Monza Place address. Further, Plaintiff's notice of non-receipt of opposition to the motion to reopen the case, filed on March 15, 2004, was served by Plaintiff on Defendants Amundson at the Monza Place address on March 12, 2004.

Pursuant to Plaintiff's request, the case was ordered reopened on March 26, 2004.

---

[1] The request was stricken because no party had sought to reopen the case.

4

Plaintiff's status report filed May 3, 2004, which detailed Plaintiff's intent to seek default judgment against Defendants Amundson or to consolidate the instant action with the nondischargeability bankruptcy action, was served on Defendants Amundson.

A stipulated stay of the proceedings pending disposition of a criminal action as to defendant Clyde A. Strohl was filed on December 13, 2004. The stipulation, which was between attorney Nunez on behalf of Defendant Strohl, and attorney Vote on behalf of Plaintiff, was served on Defendants Amundson; it recited that the action would be stayed as to Defendant Strohl only pending the results of a criminal action. It clearly indicated that Nunez was signing on behalf of Strohl.[2]

On January 7, 2005, Plaintiff filed a motion for default judgment against Defendants Amundson with supporting authorities and a declaration of Plaintiff Albizu.[3] Pursuant to the Court's order of January 26, 2005, a supplemental memorandum and declaration with exhibits were filed on March 11, 2005, along with a proof of service of the materials on the defaulting defendants against whom judgment was sought. The hearing on the Plaintiff's motion for default judgment was set for March 25, 2005.

On March 18, 2005, Defendants Wesley Amundson and Amundson

---

[2] A status report filed by Plaintiff on March 2, 2005, included an attached docket of the criminal case that indicates that the case is still pending. Thus, the action remains stayed as to Defendant Strohl.

[3] Plaintiff's motion for default judgment against Defendants Amundson was served by mail on Defendants Amundson on January 7, 2005. However, it was not until March 18, 2005, that Defendants Amundson filed opposition and moved to set aside the default.

1  and Associates (A&A) (collectively Defendants Amundson), who were

2  in default, purported to file opposition to the motion for

3  default judgment, in which they sought to argue that Plaintiff

4  was not entitled to default judgment on the merits, and to

5  demonstrate that the failure to respond timely to the complaint

6  was the result of mistake and excusable neglect. They sought

7  relief pursuant to Fed. R. Civ. P. 60(b).

8      On March 18, 2005, Defendants Amundson filed a notice of

9  motion and motion to set aside default and default judgment

10     By order dated March 21, 2005, the Court determined that

11  because Defendants Amundson had defaulted and that default had

12  not been set aside, the Court would not consider their purported

13  opposition to the motion for default judgment, which opposition

14  did not pertain to the damages or relief sought by Plaintiff, but

15  rather only to the propriety of entry of the judgment. The Court

16  determined that consideration of the Defendants' request for a

17  continuance was unnecessary because the Court would sua sponte

18  direct that the hearing on the motion for default judgment be

19  vacated. The Court noted that resolution of the Defendants'

20  request to set aside the default could render moot any default

21  judgment entered in the interim. Likewise, consideration and

22  entry of a default judgment without consideration of the reasons

23  advanced in favor of setting aside the underlying default could

24  waste the resources of the Court and the parties. The Court set

25  the hearing on the motion to set aside default for May 6, 2005;

26  it vacated the hearing then set on Plaintiff's motion for default

27  judgment pending the Court's consideration and ruling on the

28  motion to set aside the default of Defendants' Amundson. The

Court stated that when a final ruling on the motion to set aside default issued, either the motion for default judgment would be rendered moot, or the Court would reset the hearing on the motion for default judgment. The Court ordered that briefing on the Defendants' motion to set aside default should proceed as scheduled under the pertinent rules of court and local rules.

On April 21, 2005, Plaintiff filed opposition to the motion to set aside default, a supporting declaration of Stephen E. Drobny, and a request for judicial notice.

On May 2, 2005, Defendants Amundson filed supplemental declarations of Henry D. Nunez and Wesley Amundson in reply to the opposition, evidentiary objections, a motion to strike, a certificate of service, and a request for judicial notice. On May 3, 2005, Defendants filed a declaration of Janice Polglase, apparently an attorney in Nunez's office, and a memorandum in support of reply.

On May 3, 2005, Plaintiff filed a response that included a notice of untimely reply, pointing out that pursuant to Local Rule 78-230(d), the reply was due no less than five court days before the hearing, or by Friday, April 29. The earliest reply documents were filed on the fourth court day before the hearing.

Polglase filed a supplemental declaration on May 3 and 4, 2005, that indicated that she miscalculated the time period; she admitted that Nunez asked her to check the date to see if she was correct, but she failed to realize or correct her error.

On May 5, 2005, a telephonic status conference was held on the record. The motion was set for hearing on the basis of the papers previously submitted.

The hearing on the motion was held on June 9, 2005. Henry Nunez appeared on behalf of the moving Defendants, and Stephen Drobny appeared on behalf of Plaintiff. The Court had considered all the papers submitted on behalf of the parties. The matter was argued and was submitted for decision.

II. <u>Facts</u>

      A. <u>Retention of Nunez</u>

Declarations of Nunez and Wesley A. Amundson dated March 18, 2005, address a purported misunderstanding about whether Nunez represented only Strohl, or also represented Nunez.

Amundson states that his misunderstanding arose during the period in which responsive papers were due to Plaintiff's complaint, which would have been immediately after service of the complaint, or either July 19, 2002 (Amundson's declaration), or August 9, 2002 (proof of service).

Amundson states that the confusion arose after a meeting with co-defendant Strohl, a meeting which, according to the representation of Nunez at hearing, Amundson did not attend. At the meeting Strohl retained Nunez for $5,000.00. No details are given. Amundson states that after the meeting, Strohl informed him that $2,500.00 of the payment was to procure representation for Amundson also. Amundson states that he believed Strohl despite the fact that Amundson never signed a retainer agreement, paid any retainer fee at that time, or personally spoke to Nunez about being represented by him. Amundson states that he trusted that Nunez was handling all matters in his case based on Strohl's representation. He also states that Nunez never agreed to represent him, and he asserts that Nunez had not heard of any

agreement between Nunez and Strohl about splitting the retainer fee. Amundson declares that Strohl's representations were false.

In a supplemental declaration, Amundson states that he had more than one conversation with Nunez about setting aside the default and thought that it pertained to or included him. At hearing, Nunez represented that Amundson's conversations about Strohl's motion to set aside default took place with his staff (no declarations of staff members have been submitted); Nunez was not aware of them. In contrast, in his supplemental declaration, Nunez said that he had a conversation with Amundson about the status of the motion to set aside the default.

Amundson admits that he failed to file a responsive pleading, and he admits his awareness of the default entered against him and A&A.

Nunez recites, with no specifics such as date, time, or place, and without any supporting documentation or explanation for the lack of such documentation, that he was at "a joint meeting with all defendants." (Decl. in support of motion at 2.) Strohl paid him $5,000.00 to represent him, and then Strohl informed Amundson that half of the money was for representation of Amundson as well. Nunez states that this statement was without Nunez's knowledge or consent; he had never heard of such an agreement and did not consent to it; Amundson did not retain Nunez's services by any agreement or retainer at that period of time. He states that he has now been retained by Amundson. The time or circumstances of that retention are not set forth. Apparently it was after April 2003, when Nunez had a telephone conversation with Amundson in which they discussed setting aside

9

the default; Nunez believed they were talking about setting aside the default of Strohl.[4] At the hearing on this motion, Nunez stated that in view of concerns about a conflict of interest, he would not be representing Amundson in the future.

It appears that Nunez is purporting to state under penalty of perjury that his client, Strohl, made untrue statements to Amundson, who is also his client. Neither Nunez nor Amundson had reason to believe from what transpired in the meeting that Nunez represented Amundson. Thus, the clear inference is that Strohl lied to Amundson about this.

B. Amundson's Status as an Attorney

Plaintiff requests that the Court take judicial notice of a printout from the State Bar of California's website indicating that as of June 1999, and to the present, Amundson has been a member of the State Bar of California. His address is listed as 7030 Monza Plaza, Alta Loma, California 91701 (the address at which process was served and all service of papers upon the Amundson Defendants was effected in connection with this action).

C. Amundson's Correspondence with Plaintiff's Counsel

In opposition to the motion, Stephen P. Drobny submitted a declaration stating that in February 2002, his office received by facsimile a letter from Amundson dated February 4, 2002, in which Amundson responded to a letter from Kurt F. Vote (another attorney in the firm representing Plaintiff) dated January 31, 2002, in which Vote had demanded return of funds for the Plaintiff. (Decl. of Drobny, Ex. B.) In the letter Admundson

---

[4] It is not clear why Amundson would have been informed of Nunez's plans about representing Strohl.

admitted that Plaintiff invested $102,800.00 and had received

$6,200 as profit; Amundson stated that the funds would be

returned to Plaintiff by February 11, 2002. If Vote chose not to

extend the demand period for few days, any court costs would be

deducted from Plaintiff's profits before they were repaid him.

A second letter received from Amundson by facsimile and

dated February 27, 2002, stated that a deadline of that date

would not be met because funding had not yet been received from

investment projects but would be received later in March.

Amundson wrote:

> If it makes you client "feel" better to be engaged in some
> action, then by all means, go ahead and file this complaint.
> You can easily dismiss the action in a couple of weeks when
> the principal and profits are returned to your client as
> previously stated to you in my letter dated February 4th.

Decl. of Drobny, Ex. C.

Another letter dated October 7, 2002 (about a month after

default was entered, and at a time at which Amundson claims to

have been represented by Nunez), regarding "Settlement Offer in

Albizu v Strohl, et al." consisted of a settlement offer. The

offer was a total of $135,200.00. Amundson apologized for the

delay in returning the funds because the investment took longer

to mature than originally projected. Id., Ex. D.

Further, Drobny declared that on January 9, 2004, the

Amundson Defendants were served with a request to reopen the case

and set a scheduling conference; this document stated that on

September 11, 2002, defaults were entered as to Defendants Wesley

E. Amundson and Amundson and Associates. Id. at Ex. A.

D. Defenses and Prejudice

Nunez states in a supplemental declaration filed May 2,

2005, that there is no prejudice because the case is stayed as to Defendant Strohl, and Strohl will need a trial on the merits. Further, there is a meritorious defense because Amundson did not have any direct contact or communications with Plaintiff.

Defendant Amundson states in a supplemental declaration, "I dispute the allegations of the complaint."

The proposed answer, which does not appear to have been filed but was faxed to chambers upon request and appears to have been served on Plaintiff, reveals that Amundson would deny that Strohl's financial service was undercapitalized and was not a separate corporate or business entity from Strohl; would deny that he conspired with Strohl or was his agent; and would deny on information and belief that Strohl misrepresented the nature of the investment. He would deny that Defendants Amundson (Amundson and Amundson & Associates) were transferred the investment from Strohl; and would deny that they offered a new investment agreement to Plaintiff instead of cancelling the first one and sent Plaintiff a check of $6,200 in May 2001. He would deny that Plaintiff did not receive his investment and profits. Amundson would also deny all the allegations of the various claims concerning intentional misrepresentation, negligent misrepresentation, promise without intent to perform, breach of a 2001 contract of investment between Amundson and Plaintiff, conversion, breach of fiduciary duty, and RICO violations. He would raise affirmative defenses of failure to state a claim, lack of jurisdiction, statute of limitation, unclean hands, comparative fault of Plaintiff or of other entities, wilful misconduct of Plaintiff, estoppel, failure to mitigate,

1  ratification, performance, consent, waiver, mistake of fact,

2  mistake of law, breach of contract and implied covenant,

3  discharge, superseding acts, bad faith of Plaintiff, assumption

4  of risk, laches, no reliance, offset, prior breach, failure of a

5  condition precedent, third party fault, and reduction of

6  recovery.

7      Nunez also argues in the memorandum in support of reply that

8  because there are four defendants and because the sum of damages

9  and apportionment thereof among Defendants is not ascertained or

10  ascertainable without a hearing, a default judgment cannot be

11  entered by the clerk. This is true; there would have to be a

12  hearing as to damages if Plaintiff were able to show that he was

13  otherwise entitled to a default <u>judgment</u>.

14      III. <u>Analysis</u>

15          A. <u>Motion Deemed to be Motion to Set Aside Default</u>

16      Defendants Amundson have moved to set aside default and a

17  default judgment. No default judgment has been entered. The Court

18  DEEMS Defendants' motion to set aside default and default

19  judgment TO BE a motion to set aside default.

20          B. <u>Consideration of the Reply</u>

21      The Court has broad discretion to interpret and apply its

22  local rules. <u>Dulange v. Dutro Construction, Inc.</u>, 183 F.3d 916,

23  919 n. 2 (9th Cir. 1999). The Court need not consider the papers

24  submitted by way of reply. The Court finds that Polglase's

25  neglect or mistake was inexcusable. However, the hearing on the

26  motion was continued. No prejudice appears to have been suffered

27  by Plaintiff from the slight delay in the filing of Defendants'

28  reply.

1  Accordingly, the reply papers WILL BE CONSIDERED by the

2  Court.

3          C. <u>Request to Take Judicial Notice</u>

4      Defendant Amundson does not dispute his status as an

5  attorney. The Court GRANTS Plaintiff's request that the Court

6  take judicial notice of a printout from the website of the State

7  Bar of California that reflects that since June 1999 Defendant

8  Amundson has been an active member of the State Bar of

9  California, a fact not reasonably subject to dispute. Fed. R.

10 Evid. 201; <u>United States v. Alisal Water Corp.</u>, 326 F.Supp.2d

11 1032, 1036 n. 5 (N.D.Cal. 2004).

12     The Court also GRANTS Defendants' request to take judicial

13 notice of the Court's docket in the instant case. The Court may

14 take judicial notice of court records. Fed. R. Evid. 201(b);

15 <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993);

16 <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n. 1 (N.D.

17 Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir. 1981).

18         D. <u>Objections and Motion to Strike re: Drobny's</u>
              <u>Declaration</u>
19

20     On May 2, 2005, Defendants filed evidentiary objections to

21 Drobny's declaration and the correspondence attached to it (Exs.

22 B, C, and D), as well as moving to strike the declaration.

23     Defendants object to the admission of three letters received

24 by Plaintiff's counsel's office from Defendant Amundson.

25 Defendants object to the foundation laid by Drobny, namely, that

26 the letters were received by Drobny's firm by facsimile from

27 Defendant Amundson. Drobney states that the letters were received

28 by facsimile; the Court notes that they bear signatures that

14

purport to be those of Defendant Amundson, and they refer to detailed facts regarding the transactions that are the basis for the complaint in this action. Plaintiff has provided evidence sufficient to support a finding that the matter in question is what its proponent claims; there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be. Fed. R. Evid. 901(a), (b).

Defendants raise various objections to statements in the letters in which Amundson purports to admit the fact and amount of Plaintiff's investment. The Court rejects Defendants' objections of lack of personal knowledge, argumentative character, lack of foundation, conclusion, and hearsay. The Court concludes that these letters are admissions of Wesley A. Amundson, a party to this proceeding. Fed. R. Evid. 801(d)(2)(A). However, the Court finds it unnecessary to reach these objections because the Court uses the documents primarily for the purpose of proof that the statements were made by Amundson himself (as distinct from Amundson through counsel), and not for the truth of the matters asserted in the statements.

The Court DENIES Defendants' motion to strike the declaration of Drobny and the attachments thereto.

E. Timeliness

Defendants Amundson move to set aside the default pursuant to Fed. R. Civ. P. 60(b)(1), which provides that upon motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect. Because no default judgment has been entered, Defendants

15

must proceed pursuant to Fed. R. Civ. P. 55(c) instead of 60(b).

O'Brien v. R.J. O'Brien & Associates, Inc., 998 F.2d 1394, 1401

(7th Cir. 1993). Thus, the timeliness of the motion will be

judged by the standards pertinent to Rule 55(c).

The only time limitation for a motion to set aside a default

is one of reasonable time. 10 Moore's Federal Practice, 3d ed.

(2005) at 55-63. There does not appear to be any direct Ninth

Circuit authority adopting this standard or applying this

standard in the context of a motion to set aside a default, as

distinct from a motion to set aside a default judgment. Other

circuits have held that a defendant must show diligence in

seeking to open a default. See Zuelzke Tool & Engraving Co. v.

Anderson Die Castings, Inc., 925 F.2d 226, 230 (7th Cir. 1991),

abrogated on other grounds by Pioneer Inv. Services Co. v.

Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993)

(moving to set aside the default four months after learning of

default and after having reason to believe that reliance on

others was unreasonable was held not to be prompt); Dow Chemical

Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 335 (2d

Cir. 1986) (moving for relief from default seven months after

being served with notice of a default was held not to be action

within a reasonable time); Merrill Lynch Mortgage Corp. v.

Narayan, 908 F.2d 246, 251-52 (7th Cir. 1990) (delay of five

months after entry of default and of almost a year after the

answer was due was held not to constitute prompt action).

If reasonable promptness is not considered a requirement

separate and apart from the other requirements of Rule 55(c),

then it has nevertheless been considered as part of the

16

determination of good cause. <u>Merrill Lynch Mortgage Corp. v.</u> <u>Narayan</u>, 908 at 252.

Here, Defendants Amundson were served with notice of the default at the time it was entered, and they continued to be served with documents thereafter that demonstrated that no action had been taken on their behalf to set aside or remedy the default. Although the action was stayed as to Defendant Strohl, and, during the pendency of Judge Ishii's order closing the case, as to all Defendants, a review of the docket shows that after Defendant Amundsons' default was entered on September 11, 2002, the action proceeded for four months and one week until the filing on April 18, 2003 of the undersigned Magistrate Judge's first order imposing a temporary stay to permit Plaintiff to seek relief from a bankruptcy stay involving Defendant Strohl. On July 14, 2003, the Court received notice of the annulment of the stay. The action proceeded for another month and two weeks before the Strohl bankruptcy was noticed and Judge Ishii's order closing the case was filed on September 4, 2003. The stay endured until March 26, 2004, when the case was reopened.

In summary, not counting any time during which any stay was in effect as to the moving Defendants, after the default in question was entered, the case was pending for over a year and five and one-half months. Defendants have not demonstrated that their delay was reasonable or based on good cause.

In view of Amundson's being an attorney and his having received clear notice of the default, the unreasonableness of his claimed reliance on Nunez (discussed below), and the long delay, the Court will find that Defendants' delay was unreasonable, and

it will be weighed against them in the determination of good

cause.

F. <u>Setting Aside a Default</u>

Fed. R. Civ. P. 55(c) provides:

> For good cause shown, the court may set aside an
> entry of default and, if a judgment by default has
> been entered, may likewise set it aside in accordance
> with Rule 60(b).

A showing of lack of culpability sufficient to meet the Rule

55(c) standard of good cause is ordinarily sufficient to

demonstrate as well the criteria of excusable neglect or mistake

under Rule 60(b)(1) to set aside a judgment; there is no need to

consider the two matters separately. <u>Franchise Holding II v.</u>

<u>Huntington Restaurants Group, Inc.</u>, 375 F.3d 922, 927 (9th Cir.

2004); <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 696

(9th Cir. 2001). The factors informing a decision under each

standard are essentially the same: whether the defendant's

culpable conduct led to the default; whether the defendant has a

meritorious defense; and whether reopening the default judgment

would prejudice the plaintiff. <u>Id.</u> The three factors are

disjunctive; thus, a district court may deny a motion if any of

the three factors is not met by the moving party. <u>Franchise</u>

<u>Holding II, LLC v. Huntington Restaurants Group, Inc.</u>, 375 F.3d

922, 926 (9th Cir. 2004), <u>cert.</u> <u>denied</u>. It is the burden of the

party seeking relief to show that all of the factors warrant

setting aside the default. <u>Id.</u> at 926.

G. <u>Culpable Conduct</u>

Culpable conduct has traditionally been defined such that if

a defendant has received actual or constructive notice of the

filing of the action and has failed to answer, its conduct is culpable. <u>Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.</u>, 375 F.3d 922, 926. However, in the course of examining culpability in the context of setting aside a default judgment, it has been noted that the usual articulation of the governing standard is that a defendant's conduct is culpable if he has received notice of the filing of the action and <u>intentionally</u> failed to answer. <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 696-97 (9th Cir. 2001). "Intentional" in this context refers to an act or omission taken by an actor knowing what the likely consequence will be; this standard, after <u>Pioneer Investment</u>, does not exclude all intentional actions or omissions, because some omissions that were the product of intention are excusable under the <u>Pioneer</u> standard. <u>Id.</u> at 697. Thus, in this context, "intentional" means "willful, deliberate, or evidence of bad faith." <u>Id.</u> A neglectful failure to answer for which there is a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not "intentional" under the default cases in this circuit. <u>Id.</u> Thus, it is not necessarily culpable or inexcusable; rather, the equitable factors of <u>Pioneer Investment</u> must be considered.

In the present case, Defendant Amundson admits having been served with the complaint and having failed to answer.

Defendant Amundson declares that he had a genuine belief that the motion to set aside default that was prepared on behalf of Strohl was also made on his behalf. (Supp,. Decl. at 2.) It is

unlikely that this is the case because the basis of the motion to set aside the default was the effect of the bankruptcy stay, a matter unique to Defendant Strohl.

Because of the circumstances of the asserted retention of Nunez to represent Defendant Amundson, the Court declines to credit Defendant Amundson's claim that he sincerely believed that Nunez had been retained to represent him. However, even if it were assumed that Defendant Amundson believed Defendant Strohl's statement to him about having retained attorney Nunez at the time the statement was made, subsequent events warrant a finding that Defendants Amundson delayed unreasonably and did not proceed in good faith.

Correspondence in October 2002 between Amundson and Plaintiff's counsel constitute admissions of a party. The mere fact that Amundson corresponded directly with Plaintiff's counsel indicates that Defendant Amundson did not at that time believe that he was represented by counsel.

The response to the complaint, which was personally served on Defendant Amundson, was due in August 2002. Defendant Amundson was served at his own address with numerous documents in this action, including the clerk's entry of default on or about September 11, 2002; Plaintiff's motion for entry of default judgment against all defendants, which contained a declaration of attorney Vote reciting all defendants' failure to respond to the complaint and the striking of Defendant Strohl's answer, on or about March 6, 2003; Plaintiff's opposition to Defendant Strohl's motion to set aside default, which contained indications that Defendant Strohl had submitted an answer without counsel's aid

and that Plaintiff's counsel had communicated with Strohl
directly, on or about April 4, 2003; the bankruptcy court's order
detailing all the proceedings in this action between August 28,
2002, and April 18, 2003, that were released from the stay, in
June 2003; Plaintiff's motion for leave to file an amended
complaint in October 2003; Plaintiff's motion to reopen the case
as to Defendants Amundson in January 2004; Plaintiff's notice of
non-receipt of opposition on March 12, 2004; Plaintiff's status
report indicating Plaintiff's intent to seek a default judgment
against Defendants Amundson in May 2004; Plaintiff's motion for
default judgment against Defendants Amundson on January 7, 2005;
and Plaintiff's supplemental memorandum and declaration in March
2005. Despite his knowledge of the significance of these events,
Defendant Amundson apparently neglected to contact his counsel
about these repeated and clear indications of lack of
representation in the case. Any purported reliance on Defendant
Strohl's representation made back in July or August (or even
September or October) 2002 quickly became unreasonable and,
indeed, incredible. Because Defendant Amundson is an attorney,
the Court finds that Defendant's conduct in this regard was
particularly culpable. Direct Mail Specialists, Inc. v. Eclat
Computerized Techonologies, Inc., 840 F.2d 685, 690 (9th Cir.
1988). The extreme length of the delay and the fact that it was
within the control of Defendant Amundson to inquire and cure the
delay warrants an inference of culpability. The delay is not
explained, and negative inferences are not precluded, by vague
assertions by Amundson that he had discussed setting aside
default with Nunez, or by Nunez's assertions that he discussed

setting aside default with Amundson. The Court's docket reveals that no action to set aside the default was undertaken until the instant motion was filed. Plaintiff went through the effort of moving for default judgment, and the progress of this action with respect to Defendants Amundson was impeded.

Under the circumstances, it is concluded that Defendant Amundson did not proceed in good faith and in fact engaged in culpable conduct.

H. <u>Meritorious Defense</u>

The party seeking to set aside a default has the burden to show a defense such that the result at trial might be different from that reached by default; the defendant must present specific facts that would constitute a defense. <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 700 (9th Cir. 2001). Conclusional statements that a dispute exists are insufficient. <u>Franchise Holding II, LLC</u>, 375 F.3d 922, 926. It has been held not to have been erroneous to decline to set aside a default judgment where the defendant offered only a mere general denial without evidence of facts to support the denial. <u>Madsen v. Bumb</u>, 419 F.2d 4, 6 (9th Cir. 1969). However, the burden is not extraordinarily heavy; the movant need only demonstrate facts or law showing the Court that a sufficient defense is may be asserted. <u>TCI Group Life Ins. Plan</u>, 244 F.3d at 700.

The complaint alleged that in 1999 Plaintiff gave $102,000 to Strohl, who represented that the principal would be returned on request and the guaranteed return on the investment was at least five per cent monthly; Strohl transferred it to Amundson as trustee of Amundson & Associates; Amundson refused to comply with

22

Plaintiff's May 2001 request for return of the investment, offered/represented another year-long investment contract (Plaintiff did not sign it), sent one $6,200 payment in May 2001 in the form of a personal check of Amundson, and failed to return the principal as requested thereafter.

In the first claim (misrepresentation), it is alleged that Defendants fraudulently represented the original investment opportunity, the minimum rate of return, and the placement of funds in the 2001 investment contract with scheduled return of principal; they took the money with intent to convert it to personal use, and then they did so. The second claim is for negligent misrepresentation (same transactions). The third claim is for false promises without intent to perform regarding the initial investment, placement of the investment in May 2001, six per cent return for ten months, and return of principal by May 13, 2002. The fourth claim is for breach of contract against Amundson and A&A, who executed the agreement in May 2001, agreeing to invest and return the funds; the fifth is for conversion; the sixth is for breach of fiduciary duty against Amundson per the contract; and the seventh is a RICO claim for wire and mail fraud and racketeering, with a claim for treble damages.

Here, contrary to what Plaintiff argues, the fact that Amundson admitted the investment and offered to return Plaintiff's investment and profits do not preclude a meritorious defense. However, reference to Defendants' papers show an absence of a sufficient showing of a meritorious defense. In the notice of motion and motion filed on March 18, 2005, Defendants argued

23

that a genuine controversy existed as to material facts that could only be resolved by litigation; they asserted that they would show that the allegations were without merit. However, no evidentiary showing was made.

Reference was made to the proposed answer, which was not initially filed with the Court.[5] The proposed answer is unverified and contains only denials of the specific allegations of the complaint; it does not set forth facts that would constitute a defense.

Attorney Nunez declares in his supplemental declaration that a meritorious defense exists; he states, "Mr. Amundson did not have any direct contact with plaintiff and or communications with the plaintiff." (Decl. filed May 2, 2005, at 2.) This does not establish that Amundson lacked knowledge of, or did not solicit or otherwise participate in, misrepresentations to Plaintiff. Further, there is no showing that Nunez has personal knowledge as to the contact that Defendant Amundson had with Plaintiff. Nunez further declares that Amundson disputes the allegations of the complaint and accordingly has a meritorious defense. (Id.) This is insufficient to show specific facts constituting a defense.

Amundson states in his supplemental declaration filed on May 2, 2005, "I dispute the allegations of the complaint." This is likewise insufficient because it is noting more than a general denial of the allegations of the complaint.

In Nunez's memorandum filed May 3, 2005, he asserts that a

---

[5] Defendants failed to file the proposed answer electronically. The Court was informed by staff from Plaintiff's counsel's office that the proposed answer had been served upon them, and a copy of the proposed answer was faxed to the Court by Defendants' counsel on May 3, 2005, at the Court's request. Subsequently the Court directed that the faxed document be filed as the original document.

1  meritorious defense has been shown based on the allegations of

2  the answer, which is not an evidentiary document. (See Memo. at

3  pp. 8-10.) Nunez argues that third party liability will reduce

4  Amundson's liability. Defendants' argument amounts to nothing

5  more than an assertion that defenses might be made out based on

6  the answer; they does not offer facts or law showing the actual

7  existence of a meritorious defense.

8      Defendants argue that no factual inquiry or review of state

9  law is necessary to determine the merit of defenses. Defendants

10 cite Horn v. Intelectorn Corp., 294 F.Supp. 1153 (S.D.N.Y. 1968)

11 in support of that assertion. There the defendant had no notice

12 of the suit; the Court noted that the defendant raised both

13 factual and legal defenses on the merits. It appears that the

14 defendant established that at no time was there an agreement that

15 plaintiff should receive a finder's fee as had been alleged in

16 the complaint and that, in any event, the statute of frauds

17 applied to the agreement in question, which even the plaintiff

18 admitted was an oral agreement. The Court found it sufficient for

19 the defendant to state defenses which, if established at trial,

20 would defeat plaintiff's action. Id. at 1155-56.

21     Here, there is no factual showing contrary to the

22 allegations of the complaint other than Amundson's single

23 sentence in his supplemental declaration, "I dispute the

24 allegations of the complaint." There is no statement of specific

25 facts that would constitute a defense.

26     Defendants' counsel pointed to the allegations of the

27 answer, which consist of statements of legal defenses, not

28 specific facts, and which are not supported by a verification or

1  declaration.

2      Defendants argue that raising Plaintiff's unclean hands or

3  comparative fault in the answer demonstrates a defense. Defendant

4  has not established any facts that would constitute such a

5  defense.

6      Defendant asserted in the proposed answer that persons or

7  entities other than Defendant Amundson were at fault for any harm

8  suffered by Plaintiff, that any damages were caused by

9  superseding or supervening acts for which Defendant Amundson had

10  no liability, and that the conduct or omissions of third parties

11  proximately contributed to the losses sustained by Plaintiff; the

12  liability of Defendant Amundson should be diminished in

13  proportion to the amount of fault attributed to third persons.

14      At argument Defendant asserted that it would be unfair to

15  enter default judgment against Defendants Amundson when Defendant

16  Strohl would be permitted to defend on the merits and when

17  Defendants Amundson had defenses based on Strohl's conduct.

18  Defendant asked the Court to take judicial notice of portions of

19  Weil & Brown, California Practice Guide: Civil Procedure Before

20  Trial (Rutter 2004), Defaults, § 5.263, which concerns California

21  cases regarding the impropriety of a default judgment against a

22  defaulting defendant where a codefendant has raised defenses

23  which, if proven, would establish the nonliability of the

24  defaulting defendant (Adams Mfg. & Eng. Co. v. Coast Centerless

25  Grind. Co., 184 Cal.App.2d 649, 655 (1960) (judgment at trial of

26  a claim for money due for materials and services was rendered for

27  Defendant Coast, and default judgment had been rendered against

28  Defendant Black, who was allegedly Defendant Coast's joint

26

venturer or partner and whose liability, if any, was based solely

on Defendant Coast's liability; it was held that the defaulting

defendant's liability was wholly dependent upon the prevailing

codefendant's liability, and thus despite his default, the

defaulting defendant was entitled to the benefit of the favorable

determination of the codefendant's liability, and his motion to

set aside his default was rendered moot by the entry of judgment

in his favor; <u>Mirabile v. Smith</u>, 119 Cal.App.2d 685, 689 (1953)

(where a California statute permitted judgment to be entered

against one of several defendants where a several judgment was

proper, it was held improper to enter a judgment against only one

defendant who had defaulted where the judgment sought was a joint

judgment predicated upon joint liability from a partnership

obligation, and where the defenses presented by the appearing

defendants were such that if sustained, no judgment should be

entered against the defaulting defendant).

The situation presented to the Court in the instant case is

different. The matter presently before the Court concerns the

setting aside of a default, not the entry of a default judgment.

Although a motion for entry of default judgment against

Defendants Amundson is pending, it has been trailed pending

resolution of the motion to set aside default. It may be that

entry of a default judgment is inappropriate at this time in view

of the pendency of the case against Defendant Strohl. However,

the entry of a default judgment is not presently before the

Court.

Further, the existence and nature of Defendant's Strohl's

defense or defenses, if any, are unclear. Defendant Strohl's

default was entered, and the only basis for his earlier motion to

set aside the default was the pendency of a bankruptcy action and

an alleged automatic stay of jurisdiction (a matter of which

Defendant Strohl and his counsel neglected to inform the Court);

it appears that the bankruptcy court annulled any stay, so no

basis for setting aside the default of Defendant Strohl appears

to the Court. No answer has been filed on behalf of Defendant

Strohl, so the Court has no basis for knowledge of any defenses

he might assert. Defendants Amundson have not provided any facts

that would indicate that Defendant Strohl has any particular

defenses.

Further, the nature of the defaulting defendants' liability

may not be the derivative or dependent type of liability involved

in the California cases relied on by Defendants. The complaint

rests in significant part on allegations that Strohl engaged in

misrepresentation and that Amundson was his agent or co-

conspirator. However, it is also alleged that Amundson purported

to bind Plaintiff to another year of investment in 2001, and that

Defendants (including Amundson) falsely and fraudulently

represented that the funds had been put in the second investment

contract set to expire in 2002. In addition, the initial check of

$102,000.00 from Plaintiff was made out to Wesley Amundson,

Trustee, T.I. Group Trust.[6] Liability of joint tortfeasors

alleged to have acted in concert under California law is joint

and several as to economic damages, see 5 Witkin, California Law

---

[6] Defendant's counsel asked the Court to take judicial notice of the documents attached to the declaration of Plaintiff Albizu submitted in connection with the motion for default judgment that is not presently before the Court. (Mot. Def. Jmt, Decl. of Albizu, Exs. A and B.) The Court notes that Amundson purported to act as a trustee.

at §§ 43-44, 51 (9th ed. 1988). It does not appear that Plaintiff is alleging that Defendants Amundson are liable merely because of status or relationship, but rather because of their conduct as tortfeasors acting in concert or in conspiracy with Defendant Strohl.

At argument, Defendants' counsel argued that because the initial investment was made out to Defendant Amundson acting as a trustee, the action could not go forward because the trust for which Amundson purported to act as a trustee was not joined. Defendants did not cite any authority for this proposition. The Court is not prepared to attempt to discern which claim this argument might pertain to and independently research a matter that, in any event, does not appear to constitute or relate to a defense for Defendant Amundson, whose personal conduct is alleged to have been tortious.

In summary, Defendants have filed to demonstrate facts that would establish a meritorious defense. It appears that Defendants lack a meritorious defense.

I. <u>Prejudice</u>

Plaintiff argues that assets could be hidden if there is delay. Given the nature of the allegations of the complaint and the conduct of Defendants in this action, the Court finds that setting aside default would result in prejudice to Plaintiff. <u>See Franchise Holding II, LLC</u>, 375 F.3d at 926-27.

In summary, Defendants have failed to show that the bases for setting aside their defaults have been satisfied. Failure to show one of the three bases for setting aside a default warrants denial of a motion. Although the Court is aware of the policy in

favor of trying cases on their merits, the Court finds that Defendants engaged in culpable conduct, Defendants failed to demonstrate facts that would constitute a defense, and Plaintiffs would be prejudiced if the defaults were set aside.

     Accordingly, the motion of Defendants Wesley E. Amundson and Amundson and Associates to set aside their defaults IS DENIED.

          IV. <u>Telephonic Status Conference</u>

     The parties ARE DIRECTED to participate in an informal telephonic status conference set for Wednesday, August 3, 2005, at 10:00 a.m., regarding Plaintiff's motion for default judgment against Defendants Amundson, which has been trailed pending disposition of the motion to set aside default. Further, counsel for Plaintiff IS DIRECTED to arrange the conference call for the conference and to direct that call to Frances Robles at (559) 498-7325 at the appointed time.

IT IS SO ORDERED.

**Dated:    June 21, 2005**                      **/s/ Sandra M. Snyder**
icido3                                                   UNITED STATES MAGISTRATE JUDGE