1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9

| | |
|---|---|
| JESUS ALBIZU, | ) 1:02-cv-5875-AWI-SMS |
| | ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS RE: |
| | ) PLAINTIFF'S MOTION FOR DEFAULT |
| | ) JUDGMENT AGAINST DEFENDANTS |
| v. | ) WESLEY E. AMUNDSON AND AMUNDSON |
| | ) AND ASSOCIATES (Doc. 87) |
| CLYDE A. STROHL, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

I. <u>Background</u>

Plaintiff is proceeding with an action commenced on July 19, 2002, by the filing of a verified complaint alleging 1) a RICO claim in violation of 18 U.S.C. § 1962 (prohibiting specified activities in the investment of income derived from a pattern of racketeering activity or through collection of an unlawful debt) premised upon wire fraud and mail fraud via misrepresentation regarding an investment of $102,000.00 made by Plaintiff in Defendants' firm (seventh claim); and 2) pendent state claims for intentional and negligent misrepresentation, making a promise without intent to perform, breach of contract, conversion, and

breach of fiduciary duty (first through sixth claims). On September 11, 2002, defaults were entered as to Defendants Wesley E. Amundson and Amundson and Associates. On December 4, 2002, the defaults of Defendants Clyde A. Strohl and Strohl's Financial Services, Inc., were entered.

Plaintiff filed a previous application for default judgment against all four defendants in March 2003, and Defendant Strohl filed a motion to set aside his default. Hearings on both motions were vacated, and further proceedings in this matter were stayed to permit Plaintiff's counsel to obtain relief from a bankruptcy stay. On July 14, 2003, counsel for Plaintiff filed a copy of the bankruptcy Court's annulment of the automatic stay entered June 10, 2003, in a Chapter 13 proceeding in Case No. 02-17526-A-13.

On September 3, 2003, Defendant Clyde A. Strohl filed in this Court a notice of reopening a Chapter 7 proceeding, Case No. 01-15866-7, and invoking an automatic stay pursuant to 11 U.S.C. § 362(a).

On September 4, 2003, the Court ordered the case statistically closed because of the pendency of a bankruptcy proceeding, and directed the parties to submit a request to re-open case and set scheduling conference should counsel desire to reopen the case. The order was served on counsel and on Defendant Strohl. Pursuant to Plaintiff's request, the case was ordered reopened on March 26, 2004. A stipulated stay of the proceedings pending disposition of a criminal action as to defendant Clyde A. Strohl was filed on December 13, 2004. A status report filed by Plaintiff on March 2, 2005, included an attached docket of the criminal case that indicates that the case is still pending.

1  Thus, the action remains stayed as to Defendant Strohl.[1]

2      On January 7, 2005, Plaintiff filed the motion for default

3  judgment against Defendants Wesley E. Amundson and Amundson &

4  Associates only (Defendants) with supporting authorities and a

5  declaration of Plaintiff Albizu and counsel Stephen Drobny.

6  Pursuant to the Court's order of January 26, 2005, a supplemental

7  memorandum and declaration of Drobny with exhibits were filed on

8  March 11, 2005, along with a proof of service of the materials on

9  the defaulting defendants against whom judgment is sought.

10     Through counsel, Defendants filed opposition on March 18,

11  2005, a motion to set aside default and default judgment as well

12  as evidentiary objections to the declarations of Drobny and

13  Albizu. On June 23, 2005, Defendants' motions were deemed to be a

14  motion to set aside default only because no default judgment had

15  been entered; further, the Court denied Defendants Amundson's

16  motion to set aside the default on June 23, 2005.

17     Defendants' counsel's motion to withdraw as attorney, which

18  was not opposed by Defendants, was granted on August 24, 2005.

19     A supplemental brief in support of the motion for default

20  judgment was filed on September 9, 2005, by Defendant Amundson,

21  proceeding pro se. The Court by order dated September 23, 2005,

22  permitted Defendants to file a brief within the limited scope of

23  permissible opposition; Defendants' brief was filed on October

24  14, 2005. Plaintiffs filed a reply on October 28, 2005.

25     Plaintiff's motion came on regularly for hearing on November

26

27      _____
        [1] Plaintiff's counsel reported at the hearing on this motion that the criminal action remains pending and that
28  trial has been set for February 2006; further, Mr. Nunez has revealed that Defendant Strohl anticipates another
    bankruptcy proceeding.

                                            3

4, 2005, at 9:30 a.m. in Courtroom 4 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Stephen P. Drobny of McCormick, Barstow, Sheppard, Wayte, and Carruth appeared on behalf of Plaintiff; Defendant Wesley E. Amundson appeared pro se.

   II. <u>Requirements for Entitlement to Default Judgment</u>

   A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where 1) the defendant has been served with the claim; 2) the defendant's default has been entered for failure to appear; 3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and 4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the sufficiency of the allegations in the complaint to support judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472; the possibility of a dispute concerning

4

material facts, id.; whether the default was due to excusable neglect, id.; and the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id.

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392. Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

### A.  Status of the Parties, Service, Notice, and Entry of Default

The proof of personal service of the summons on Defendant Wesley E. Amundson, which consists of a declaration of a registered California process server that the summons and other named documents were personally served on Defendant Amundson on August 9, 2002, and which was filed here on August 27, 2002, does not indicate that the complaint was served, but the summons itself states that the complaint was served with the summons. (Doc. 4.)

Likewise, the proof of personal service on Defendant Wesley Amundson and Associates, which consists of the declaration of a registered process server that the copies were served on Wesley Amundson as authorized to accept for Amundson & Associates on August 9, 2002, does not indicate that the complaint was served,

but the summons itself states that the complaint was served with the summons. (Doc. 7.)

This service is sufficient pursuant to Fed. R. Civ. P. 4(c), (e), and the law of California, the state in which this Court is located. Personal service upon an individual defendant is sufficient. Fed. R. Civ. P. 4(e)(2). As to Defendant Amundson & Associates, the complaint alleges that it was a business of unknown origin. (Complt. at 2.) It is not clear what form of entity it was. Under California law, service on a corporation or joint stock company may be effected by delivery to an agent or other person authorized to receive service of process or an officer or general manager. Cal. Civ. Proc. Code §§ 416.10, 416.30. Service on an unincorporated association may be effected by delivery to an agent for service of process, a general partner, or a general manager if the association is a general or limited partnership, or by delivery to an agent or other person authorized for service of process, an officer, or a general manager. Cal. Civ. Proc. Code § 416.40. The process server indicated that Amundson was served as an authorized agent. Hence, service was sufficient under California law.

There is no indication that either Defendant answered. Thus, the clerk's entry of default against the Defendants on September 11, 2002, was proper.

The application for the default judgment was served on Defendant Wesley E. Amundson on January 7, 2005; the supplemental submissions were served by mail on March 11, 2005, and September 9, 2005; the reply was also served by mail on Defendants on October 28, 2005. Thus, Plaintiff is in compliance with Fed. R.

Civ. P. 55(b)(2), which requires that written notice of an application for default judgment be served at least three days prior to the hearing on the defaulting party.

Further, the notice provided by the complaint was adequate pursuant to Fed. R. Civ. P. 55(d) and 54(c), which require that a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Plaintiff expressly alleged in the complaint that Plaintiff sought damages that included $102,000 in principal, $55,800 in interest from the May 2001 agreement, plus accrued prejudgment interest of $27.95 per day, with treble damages of $306,000 and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c)$50,000, and costs. (Complt. at 11, 15-18.)

Fed. R. Civ. P. 55(d) and 54(c) require that a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Here, the amount of punitive damages was not stated in the complaint, although it was stated in the motion for default judgment. It has been held that where a type of damages is requested in the complaint in an amount to be proved, but the amount was not specified, recovery in excess of an amount stated is permitted. Henry v. Sneiders, 490 F.2d 315, 317 n. 2 (9th Cir. 1974), cert. denied Sneiders v. Henry, 419 U.S. 1060 (1974). Here, punitive damages were prayed for in an amount sufficient to punish Defendants for their wrongdoing and to deter others from engaging in similar misconduct, with respect to the first, third, fifth, and sixth claims. Defendants were given appropriate notice of the amount sought in the papers seeking the default judgment, and Defendants

1   were served with these papers and appeared and defended as to the

2   amount of punitive damages claimed. Rule 54(c) has been

3   satisfied.

4       In his supplemental declaration, Stephen P. Drobny declares

5   that neither of the Amundson defendants is an infant,

6   incompetent, or member of the armed forces.

7       In summary, there is no defect with respect to notice,

8   status or interest of the parties, or presence of a member of the

9   armed forces, which would render entry of default judgment

10  inappropriate.

11          B. <u>Sufficiency of the Complaint</u>

12              1) <u>First Claim: Intentional Misrepresentation</u>

13      Plaintiff has asserted three claims of fraud against the

14  Amundson Defendants: 1)Intentional Misrepresentation; 2)

15  Negligent Misrepresentation; and 3) Promise without Intent to

16  perform. These state law claims are codified in sections 1709 and

17  1710 of the California Civil Code. Civil Code § 1709 provides

18  that one who willfully deceives another with intent to induce

19  him to alter his position to his injury or risk is liable for any

20  damages which he thereby suffers. Civil Code 5 1710 then goes on

21  to distinguish between the different types of conduct that will

22  satisfy the first element of "willful deception" by providing in

23  pertinent part:

24          A deceit, within the meaning of the last section,
            is either:
25              1. The suggestion, as a fact, of that which
            is not true, by one who does not believe it to be
26          true [intentional misrepresentation];
                2. The assertion, as a fact, of that which
27          is not true by one who has no reasonable ground
            for believing it to be true [negligent
28          misrepresentation];

8

```
...; or
     4. A promise, made without any intention of
performing it [promise without intent to perform].
```

The elements of fraud that will give rise to a tort action for deceit are misrepresentation, i.e., false representation, concealment, or nondisclosure; knowledge of falsity, or scienter; intent to defraud, i.e., to induce reliance; justifiable reliance; and resulting damage. Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 974 (1997).

With respect to his allegations of intentional misrepresentation, Plaintiff has alleged that: 1) on or about September 1999, the Amundson Defendants' agent, Clyde Strohl, and Defendants, approached Plaintiff with an investment opportunity whereby it was asserted that Plaintiffs "investment" would have a guaranteed minimum rate of return of 5% (Complt. at ¶¶ 12, 22); 2) Amundson thereafter in May 2001 represented to Plaintiff that Plaintiff's investment funds had in fact been placed in an investment that would pay monthly returns of 6% (Complt. at ¶¶ 15, 22); 3) the defendants made these representations falsely and fraudulently, knowing they were false, with intent to convert them, and without the intent to invest them (Complt. at ¶ 23); 4) that defendants made these representations with the intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff to tender his investment of $102,000 (Complt. at ¶ 24); 5) Plaintiff was ignorant of the falsity and believed these representation to be true and actually relied on these representation in tendering his investment (Complt. at ¶ 25). Further, had Plaintiff known the falsity of these representations, he would not have tendered his investment.

(Cmplt. at ¶ 25.) Plaintiff also alleged that he has incurred
actual damages in the amount of $102,000 in that defendants have
failed and refused to return Plaintiffs investment
principal. (Complt. at ¶¶ 20, 26.)

Accordingly, it is concluded that in the complaint,
Plaintiff has alleged facts sufficient to state a claim for
intentional misrepresentation.

### 2) Second Claim: Negligent Misrepresentation

The elements of a claim for negligent misrepresentation are
1) a defendant's representation of a material fact; 2) falsity of
the fact; 3) knowledge by the defendant that it was false, or
negligent or reckless lack of reasonable grounds to believe the
representation to be true; 4) intent to induce the other party to
act on the representation; and 5) injurious reliance by the other
party on the representation. Howell v. Courtesy Chevrolet, Inc.,
16 Cal.App.3d 391, 402 (1971).

With respect to his allegations of negligent
misrepresentation, Plaintiff has alleged in the complaint that:
1) the Amundson Defendants' agent, Clyde Strohl, approached
Plaintiff with an investment opportunity whereby it was asserted
that Plaintiffs "investment" would have a guaranteed
minimum rate of return of 5%; 2) Amundson thereafter
represented that Plaintiffs Investment had in fact been placed in
an investment that would pay monthly returns of 6%; 3) the
defendants made these representations without any reasonable
grounds for believing them to be true; 4) defendants made these
representations with the intent to defraud and deceive Plaintiff
and with the intent to induce Plaintiff to tender his investment

of $102,000; 5) Plaintiff believed these representation to be true and actually relied on these representation in tendering his investment; 6) Had Plaintiff known the falsity of these representations, he would not have tendered his investment; and 7) Plaintiff has incurred actual damages in the amount of $102,000 in that defendants have failed and refused to return Plaintiff's investment principal. (Complt. at ¶¶ 12, 15, 22, 23, 29, 30, 31, 32, 33.)

Accordingly, it is concluded that Plaintiff has sufficiently pled the elements of negligent misrepresentation.

3) <u>Third Claim: Promise without Intent to Perform</u>

Further, the Court concludes that Plaintiff has sufficiently alleged a claim of fraud based on promise without intent to perform. In addition to the allegations set forth above, Plaintiff has alleged that the promises described hereinabove were made without any intent to perform. (Cmplt. at ¶¶ 34-40.)

4) <u>Fourth Claim: Breach of Contract</u>

"A contract is an agreement to do or not to do a certain thing." Cal. Civ. Code § 1549. "It is essential to the existence of a contract that there should be: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and 4. A sufficient cause or consideration." Cal. Civ. Code § 1550. The elements of a claim for breach of contract are the existence of a contract, Plaintiff's performance thereof, Defendant's breach, and damages resulting therefrom. <u>Acoustics, Inc. v. Trepte Construction Co.</u>, 14 Cal.App.3d 887, 913 (1971).

Here, Plaintiff has alleged a written agreement between Plaintiff and Amundson entered into on or about May 14, 2001,

11

1  whereby Defendants agreed to: 1) place Plaintiffs

2  investment funds in an investment that would pay a monthly return

3  of at least 6% for ten months; and 2) return Plaintiffs

4  investment principal of $102,000 on or about May 13, 2002 (the

5  "Agreement"). (Complt. at ¶ 43.) It appears from the allegations

6  of the complaint that Plaintiff was to continue to keep his

7  investment with Defendants. (Id. at p. 4.)

8      Accordingly, it is concluded that Plaintiff has alleged an

9  agreement to do a certain thing, i.e., place Plaintiffs funds in

10  an investment that would provide the represented return; there

11  was an exchange of valuable performances and a lawful object.

12  Plaintiff has sufficiently pled the existence of a contract.

13  Plaintiff further alleged that the Amundson Defendants breached

14  the terms of the Agreement by: 1) failing to make nine out of the

15  ten monthly interest payments; and 2) failing to return

16  Plaintiff's investment principal of $102,000 on or about May 13,

17  2002. (Complt. at ¶ 45.) Plaintiff further alleged that he

18  incurred actual damages in the amount of $157,800, consisting of

19  Plaintiff's principal investment of $102,000 and nine months of

20  the promised 6% monthly return of $6,200 per month as a result of

21  such breach. (Id. at 11.)

22      The Court thus concludes that Plaintiff properly pled a

23  cause of action for breach of contract.

24          5) Fifth Claim: Conversion

25      "Conversion is the wrongful exercise of dominion over the

26  property of another. The elements of a conversion are the

27  plaintiff's ownership or right to possession of the property at

28  the time of the conversion; the defendant's conversion by a

wrongful act or disposition of property rights; and damages."
Spates v. Damaron Hospital Association, 114 Cal.App.4th 208, 211
(2003). It is not necessary that there be a manual taking of the
property; rather, it is sufficient to show an assumption of
control or ownership over the property, or that the alleged
converter has applied the property to his own use. Id. "To
establish a conversion, it is incumbent upon the plaintiff to
show an intention or purpose to convert the goods and to exercise
ownership over them, or to prevent the owner from taking
possession of the property." Zaslow v. Kroenert, 29 Cal.2d 541,
550 (1946). Failure to deliver property upon demand is sufficient
conduct. Id.  While it is true that money cannot be the subject
of an action for conversion unless there is a specific sum
capable of identification, it is not necessary that each coin or
bill be earmarked. It is established that when an agent is
required to turn over to his principal a definite sum received by
him on his principal's account, the remedy of conversion is
proper. Fischer v. Machado, 50 Cal.App.4th 1069, 1072 (1996).

     Here, Plaintiff alleged that tendered his property, the sum
of $102,000, to defendants based on representations made by the
defendants, and with an understanding that he would be entitled
to return of his principal upon demand. Plaintiff has further
alleged that once he became aware that defendants'
representations were false, he made numerous demands to
defendants that they return his funds, all to no avail. Finally,
Plaintiff has alleged that he has incurred damages in the amount
of his lost principal. (Complt. at ¶¶ 47-50, 12, 15.)

     Plaintiff has pled a right to ownership of the investment

principal, the defendants' conversion by the wrongful retention of such principal, and actual damages in the amount of the lost principal. Accordingly, the Court concludes that Plaintiff adequately pled a cause of action for conversion.

6) <u>Sixth Claim: Breach of Fiduciary Duty</u>

The elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) the breach of that duty; and 3) damages proximately caused by that breach. <u>Mosier v. Southern Cal. Physicians Ins. Exchange</u>, 63 Cal.App.5th 1022, 1044 (1998).

With respect to the first element, the principal transactional allegations have been previously set forth. Plaintiff has further alleged that he entered investment agreements with defendants in or about September 1999, and with Defendants Amundson on or about May 14, 2001. Plaintiff has alleged that by virtue of these agreements, defendants were held in a position of trust and confidence by Plaintiff and, thus, each owed fiduciary duties to Plaintiff. (Complt. at ¶¶ 52-54.) Plaintiff alleged that Defendants breached their fiduciary duties to Plaintiff by making misrepresentations, failing and refusing to return Plaintiffs funds upon repeated requests to do so, and by converting Plaintiffs funds to their own personal use. (<u>Id.</u> at ¶55.) With respect to the final element, Plaintiff has asserted that the breaches of these duties proximately caused damages in the amount of his lost investment principal. (<u>Id.</u> at ¶ 56.)

The Court thus concludes that Plaintiff properly pled a claim for breach of fiduciary duty.

14

### 7) Seventh Claim: RICO

Plaintiffs allege a claim pursuant to 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To allege a civil claim under RICO, Plaintiffs must allege 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity 5) causing injury to plaintiffs' business or property. 18 U.S.C. § 1964(c); Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001). An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise may be a group of individuals associated in fact for wholly unlawful ends; however, Plaintiff must show that the enterprise has an existence separate and apart from the alleged pattern of racketeering activity in which it engages. United States v. Turkette, 452 U.S. 576, 583 (1981). Plaintiff must further allege an ongoing organization, formal or informal, in which the various members operate as a continuing unit. United States v. Turkette, 452 U.S. at 583; Chang v. Chen, 80 F.3d at 1297. RICO thus requires the enterprise to be more than a conspiracy and to have an ascertainable structure separate and apart from the structure inherent in the conduct of the pattern of racketeering activity. Chang v. Chen, 80 F.3d at 1299.

Here, Plaintiffs allege that Defendant Strohl Financial was

a California corporation and that Defendant Amundson and

Associates was a business of unknown origin but doing business

within California. Plaintiff alleges that Strohl Financial and

Amundson and Associates were enterprises within the meaning of 18

U.S.C. §§ 1961(4) and 1962(a-c) and that they were engaged in

activities which affected interstate commerce; Defendants Strohl

and Amundson used the mails and interstate telephone and

facsimile lines in engaging in the fraudulent and unlawful

activity alleged above, and thereby affected interstate commerce;

and Defendants Strohl and Amundson were employed by or associated

with the enterprises alleged above and conducted or participated

in the conduct of the affairs of the enterprises through a

pattern of racketeering activity within the meaning of 18 U.S.C.

§§ 1961(1)(B), 1961(E), 1961(5), and 1962(a-c), to wit, engaging

in multiple instances of wire fraud in violation of 18 U.S.C. §

1341 and multiple instances of mail fraud in violation of 18

U.S.C. § 1343. By reason of Defendants' violations of § 1962(a-

c), Plaintiff was injured by way of loss of $102,000 in unpaid

principal , accrued prejudgment interest, and post-judgment

interest at 10 per cent per annum. (Complt. at p. 14-15.) The

fraud was specifically set forth in portions of the complaint

which were incorporated into the RICO claim and which have been

previously discussed herein.

It appears that Plaintiff's complaint alleged that

Defendants Amundson engaged in fraudulent conduct as part of

enterprises and a pattern of racketeering activity that caused

injury to Plaintiff's property, all within the meaning of the

statute. Accordingly, it appears that Plaintiff has adequately

1    stated a civil RICO claim.

2            C. <u>Propriety of Default Judgment</u>

3        The Court finds that Defendants have not answered the

4    complaint, and that their failure to do so was culpable.[2] They

5    have received notice of the action and of this application for

6    default judgment. Considering the nature and extent of the delay

7    and the possibility of prejudice to the plaintiff, entry of

8    default is appropriate if the presence of another defendant is

9    not considered.

10       The opposition of Defendants submitted by counsel Henry D.

11   Nunez does not support denial of default judgment. Any concerns

12   regarding the entry of default have already been considered by

13   the Court in connection with the motion to set aside default,

14   which was denied on June 23, 2005. The Court routinely issues

15   briefing orders to parties seeking default judgment in order to

16   obtain input on the issues needed to be addressed in findings and

17   recommendations to be filed for review by the District Judge;

18   thus, the Court rejects any assertion that evaluation of the

19   propriety of default need be made solely upon the initial motion

20   for default judgment, or that permitting supplemental briefing

21   was unfair or unwarranted. Further, there is no showing of a

22   genuine controversy as to the material facts of this case;

23   Defendants Amundson had an opportunity to submit factual or

24   evidentiary material regarding the presence of a defense, and the

25   Court concluded that Defendants did not make a showing sufficient

26   to warrant setting aside the default.

27   _____

28       [2] The Court has previously denied a motion to set aside the default of Defendants Amundson.

1    The Court has considered the objections to the initial

2    declarations of Plaintiff Jesus Albizu. The Court will not

3    consider statements made upon information and belief; otherwise

4    the objections are overruled. Plaintiff had sufficient knowledge

5    of the checks and the joint venture agreement, copies of which he

6    submitted as exhibits to his declaration, in order to provide a

7    foundation. Further, the Court notes that with respect to

8    liability, it has relied primarily on the uncontroverted

9    allegations of the complaint as distinct from evidentiary matter

10   submitted by the parties. Statements of Defendant Amundson

11   regarding reasons for failure to return the principal are

12   admitted to show that they were made, not for the truth of the

13   matters asserted therein.

14   With respect to the objections filed on March 21, 2005, to

15   the declaration of Drobny submitted in March 2005, the Court

16   notes that with respect to Court orders referred to therein, the

17   Court takes judicial notice of those orders.

18   The presence of another defendant with an unclear status as

19   to the merits of the case creates a potential for dispute as to

20   the material facts of the case on the merits. Further analysis

21   with respect to Fed. R. Civ. P. 54(b) is set forth below.

22              D. <u>Damages</u>

23   Plaintiff has shown by his declaration and exhibits thereto

24   that in September 1999, he tendered $102,000 to Defendants in the

25   form of a cashier's check made out to Wesley E. Amundson as

26   trustee of the T.I. Group Trust (Decl., Ex. A), and an $800

27   investment fee (Ex. C). Although the joint venture agreement

28   entered into in September 1999 specified that there was no

                                   18

liquidity of deposit during the term of the joint venture
agreement (Ex. B), there was no term specified in the agreement,
and Plaintiff alleged in the verified complaint that on May 14,
2001, Defendant Amundson sent to Plaintiff an agreement
purporting to bind him for another year of investment to expire
on May 13, 2002, with respect to which a six per cent monthly
return of $6,2000 per month was guaranteed.

### 1) Fraud Claims

On the claims concerning intentional misrepresentation and
promise without intent to perform, Plaintiff claims entitlement
to actual damages in the amount of $102,000 pursuant to Cal. Civ.
Code § 3281, which provides that every person who suffers
detriment from the unlawful act or omission of another may
recover compensation therefor in money, which is called damages,
and § 3283, which permits an award of damages for detriment
resulting after the commencement of suit or certain to result in
the future. These sections do not provide a measure of damages,
and despite having been requested to provide such authority,
Plaintiff does not cite to authority for the measure of damages.
Cal. Civ. Code § 3333 provides that for the breach of an
obligation not arising from contract, the measure of damages,
except where otherwise expressly provided by this code, is the
amount which will compensate for all the detriment proximately
caused thereby, whether it could have been anticipated or not.
Plaintiff is thus entitled to $102,000, his initial contribution.

Pursuant to Cal. Civ. Code § 3288, which provides for
interest in the discretion of the trier of fact in an action for
the breach of an obligation not arising from contract, and in

1  every case of oppression, fraud, or malice, Plaintiffs are

2  entitled to interest (prejudgment). The Court finds reasonable

3  Plaintiff's proposal to use the rate of ten per cent per annum,

4  the statutory rate for a state claim of breach of contract that

5  does not stipulate a rate of interest pursuant to Cal. Civ. Code

6  § 3289(b), from May 13, 2002, the date upon which the principal

7  was due to be returned.

8      Finally, Plaintiff is entitled to exemplary and punitive

9  damages pursuant to Cal. Civ. Code § 3294, which provides for

10  damages for the sake of example and by way of punishing the

11  defendant in an action for breach of an obligation not arising

12  from contract, where it is proven by clear and convincing

13  evidence that the defendant has been guilty of oppression, fraud,

14  or malice. "Fraud" within the meaning of § 3294 means an

15  intentional misrepresentation, deceit, or concealment of a

16  material fact known to the defendant with the intention on the

17  part of the defendant of thereby depriving a person of property

18  or legal rights or otherwise causing injury. The uncontroverted

19  allegations of the complaint are sufficient to establish to the

20  requisite degree the fraud of Defendant.

21      Punitive damages are designed to serve the purposes of

22  deterrence and retribution. The Due Process Clause prohibits the

23  imposition or arbitrary or grossly excessive punitive damages;

24  factors to consider in determining the amount of punitive damages

25  include to consider three guideposts: 1) the degree of

26  reprehensibility of the defendant's misconduct; 2) the disparity

27  between the actual or potential harm suffered by the plaintiff

28  and the punitive damages award (multipliers of a single digit

generally should not be exceeded); and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. State Farm v. Campbell, 538 U.S. 408, 418, 425 (2003). Here, there was clear evidence of fraud; however, there are no circumstances otherwise rendering the Defendant's conduct egregious, and no evidence of a potential penalty amounting to the $918,000 sought by Plaintiff. A multiplier of three appears to be appropriate to set an example and deter others.

Accordingly, the Court concludes that $306,000 in punitive damages should be awarded on claims one and three.

### 2) Negligent Misrepresentation

Plaintiff is entitled to general damages of $102,000; however, punitive damages are recoverable for intentional, but not negligent, misrepresentation. Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1241 (1995). The jury also has discretion to award prejudgment interest on the plaintiff's loss "from the time the plaintiff parted with the money or property on the basis of the defendant's fraud." Id. (citing Nordahl v. Dept. of Real Estate, 48 Cal.App.3d 657, 665 (1975)). The Court finds reasonable Plaintiff's proposal to use the rate of ten per cent per annum, the statutory rate for a state claim of breach of contract that does not stipulate a rate of interest pursuant to Cal. Civ. Code § 3289(b).

### 3. Breach of Contract

Plaintiff alleged that in May 2001, Defendants executed a written contract in favor of Plaintiff pursuant to which Defendants agreed to invest Plaintiff's $102,000, return the

21

investment in a year, and pay six per cent monthly return on the

principal for ten months. Subtracting the one payment of monthly

return received by Plaintiff, Plaintiff is entitled to $157,880,

representing principal and nine months of a return of six per

cent of principal monthly, and the $800.00 investment fee

pursuant to the governing California law which permits recovery

in contract actions of as nearly as possible the equivalent of

performance, or "the amount which will compensate the party

aggrieved for all the detriment proximately caused thereby, or

which, in the ordinary course of things, would be likely to

result therefrom." Cal. Civ. Code § 3300; see also Cal. Civ. Code

§ 3302, providing that the detriment caused by the breach of an

obligation to pay money only is deemed to be the amount due by

the terms of the obligation, with interest thereon. Plaintiff is

further entitled to prejudgment interest in the amount of ten per

cent per annum after May 13, 2002. Cal. Civ. Code § 3289(b).

### 4. Conversion

Cal. Civ. Code § 3336 provides:

The detriment caused by the wrongful conversion of
personal property is presumed to be:

First--The value of the property at the time of
conversion, with the interest from that time, or
an amount sufficient to indemnify the party injured
for the loss which is the natural, reasonable
and proximate result of the wrongful act complained
of and which a proper degree of prudence on his part
would not have averted; and

Second--A fair compensation for the time and money
properly expended in pursuit of the property.

Plaintiff is thus entitled to $102,000 in unpaid principal.

Although Plaintiff is entitled to prejudgment interest from the

time of conversion, and Plaintiff further has alleged that

22

Plaintiff is entitled to interest accruing from the first date

Plaintiff demanded the return of his funds (Complt. at ¶ 50),

Plaintiff has not established that date. Thus, the Court finds

that an award of prejudgment interest is not appropriate on this

claim. See Stan Lee Trading, Inc. v. Holtz, 649 F.Supp. 577, 581-

82 (C.D.Cal.1986).

Plaintiff alleged that Defendants' conversion was

accomplished pursuant to fraudulent misrepresentations upon which

Plaintiff justifiably relief; further, Plaintiff alleged that

Defendants' conduct was intentional, despicable, and such taht

subjected Plaintiff to a cruel and unjust hardship in conscious

disregard of Plaintiff's rights. "Oppression" within the meaning

of Cal. Civ. Code § 3294, which permits the recovery of exemplary

damages, means despicable conduct that subjects a person to cruel

and unjust hardship in conscious disregard of the person's

rights. Cal. Civ. Code § 3294(c)(2). Thus, Plaintiff is entitled

to exemplary damages on this claim, and the Court finds that

$306,000 is appropriate for the purposes of deterrence and

punishment. However, solely because the Court has already awarded

$306,000 in punitive damages for essentially the same conduct,

it does not appear that any further award of punitive damages is

necessary to deter others and to punish the Defendants. Cf.

Stevens v. Owens-Corning Fiberglas Corp., 49 Cal.App.4th 1645,

1661 (1996), rev. denied January 15, 1997.

### 5) Breach of Fiduciary Duty

Plaintiff seeks his $102,000 investment; he is entitled to

at least this out-of-pocket loss. Fragale v. Faulkner, 110

Cal.App.4th 229, 238 (2003). He also seeks prejudgment interest

1   pursuant to Cal. Civ. Code § 3288, permitting interest in the

2   discretion of the jury in an action for the breach of an

3   obligation not arising from contract in every case of oppression,

4   fraud, or malice. In light of his allegations that Defendants'

5   breach of duty was despicable and subjected Plaintiff to a cruel

6   and unjust hardship in conscious disregard of Plaintiff's rights

7   and thus was oppressive within the meaning of Cal. Civ. Code §

8   3294, he is entitled to interest. Further, he is entitled to

9   exemplary damages pursuant to § 3294, and $306,000 is an

10  appropriate amount to achieve the purposes of punitive damages.

11  Michelson v. Hamada, 29 Cal.App.4th 1566, 1582 (1994). Again,

12  however, in light of the previous award of punitive damages in

13  the amount of $306,000, no further award is necessary.

14                       6) RICO Treble Damages

15      Title 18 U.S.C. § 1964(c) provides that any person injured

16  in his business or property by reason of a violation of section

17  1962 may sue in district court and recover threefold damages,

18  including the cost of suit and a reasonable attorney's fee.

19  Plaintiff seeks his actual damages of $102,000 trebled to

20  $306,000. This is appropriate pursuant to the statute.

21      Plaintiff states that an award of prejudgment interest,

22  which is not provided for in the statute, is committed to the

23  sound discretion of the Court, citing Frederick County Fruit

24  Growers Ass'n v. Martin, 968 F.2d 1265, 1275 (D.C.Cir. 1992)

25  (regarding discretion to award interest on funds to be paid as

26  restitution. However, it is not shown that an award of

27  prejudgment interest is necessary to compensate the Plaintiff in

28  light of the treble damages already awarded. Cf. In re Crazy

                                  24

1  Eddie Securities Litigation, 948 F.Supp. 1154, 1167 (E.D.N.Y.

2  1996).

3               7) RICO Attorney's Fees

4       Drobny's declaration of March 2005 includes attached

5  billings; however, the declaration states, and review of a

6  portion of the billings confirms, that the billings concern not

7  only this action, but also litigation stemming from the

8  investment scam, including this case and related litigation

9  necessitated by Mr. Strohl's bankruptcies. There are references

10 to motions and proceedings which did not occur in this action.

11 The billings are not segregated to identify efforts undertaken in

12 this case alone. There is no stated total of attorney's fees

13 requested in the declaration; there is only a statement of what

14 the hourly rates were. There is no itemization of the tasks

15 undertaken in this case alone or the time spent on those tasks

16 that would permit assessment of the amount of reasonable

17 attorney's fees. The motion itself seeks only a reasonable

18 attorney's fee pursuant to 18 U.S.C. § 1964(c). No briefing

19 regarding how the fee should be computed, and no statement of

20 totals or how those totals have been reached, is submitted.

21 Plaintiff has not submitted materials designed to establish

22 entitlement to any particular amount of fees.

23      In the supplemental brief in support of the motion,

24 Plaintiff expressly acknowledges that some of the fees were

25 generated in other cases but that all of the entries were billed

26 to one file, and that it would be "quite difficult to segregate

27 out those entries that relate to services performed for the

28 above-captioned case from those that services that were performed

                              25

for the related matters." (Supp. Memo. March 11, 2005 at 15 n. 5.) Plaintiff further acknowledges that several unspecified billable entries relate to both this case and the related matters; Plaintiff acknowledges that the Court might view only a portion of these attorney's fees as appropriately awarded on Plaintiff's RICO claim. Pursuant to the supplemental declaration of Stephen Drobny, over $46,000 in attorney's fees is claimed, but no straightforward basis for the Court to determine which hours or tasks relate to this case is given.

It is the burden of the party seeking the award to submit evidence supporting the hours worked and rates claimed, and when the documentation of hours is inadequate, a court may reduce an award accordingly. Hensley, 461 U.S. at 433, 437. A party requesting a fee award has the burden of presenting detailed records of the time spent, so that the judge can make a fair evaluation of the amount of fees warranted. The records should be comparable to those that a private attorney would present to a client to substantiate a fee. Evers v. Custer County, 745 F.2d 1196, 1205 (9th Cir. 1984), citing Hensley v. Eckerhart, 461 U.S. 424. The minimum required for satisfaction of this burden is to list hours and identify the general subject matter of the time expenditures. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000). Fee awards will be set aside where summaries make it very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours. Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 623 (9th Cir. 1993).

Here, the tasks and time relating solely to this litigation

26

were not adequately identified. The Court will not pick through

stacks of billing summaries in order to isolate the data needed

to reach a computation of reasonable attorney's fees. Plaintiff

has not shown what a reasonable attorney's fee would consist of

in this action.

Accordingly, the Court finds that Plaintiff has not shown

entitlement to any sum as a reasonable attorney's fee, and the

Court thus finds that Plaintiff is not entitled to an award of

fees.

E. <u>Costs</u>

No claim for costs is made in this motion.

F. <u>Judgment as to Defendants Amundson Only</u>

Fed. R. Civ. P. 54(b) provides:

When more than one claim for relief is presented in an
action, whether as a claim, counterclaim, cross-claim,
or third-party claim, or when multiple parties are
involved, the court may direct the entry of a final
judgment as to one or more but fewer than all of the
claims or parties only upon an express determination
that there is no just reason for delay and upon an
express direction for the entry of judgment. In the
absence of such determination and direction, any order
or other form of decision, however designated, which
adjudicates fewer than all the claims or the rights
and liabilities of fewer than all the parties shall
not terminate the action as to any of the claims or
parties, and the order or other form of decision is
subject to revision at any time before the entry of
judgment adjudicating all the claims and the rights
and liabilities of all the parties.

The policy concerns underlying Rule 54(b), namely, finality,

severability, and avoidance of piecemeal litigation, arise

principally in the context of the availability of appellate

recourse. <u>See</u> <u>Sears, Roebuck & Co. v. Mackey</u>, 351 U.S. 427, 432-

48 (1956); <u>W. L. Gore & Associates, Inc. v. International Medical</u>

<u>Prosthetics Research Association, Inc.</u>, 975 F.2d 858, 862-65

(Fed. Cir. 1992). However, considerations of fairness and the sound administration of justice are also applicable to the entry of a default judgment in a case involving multiple parties or claims. Further, default judgment should not be entered against a defendant who is alleged to be liable jointly with other defendants until the case is adjudicated against all defendants, or all defendants have defaulted; the possibility of inconsistent judgments must be avoided. <u>Frow v. La Vega</u>, 15 Wall. 552, 554-55 (1872) (default judgment against one defendant charged with joint participation in fraud held to be improper until judgment against the other defendants was adjudicated). It has been held that despite the absence of an allegation of joint liability, entry of default judgment against a single defaulting defendant is improper where the defendants are similarly situated defendants, even if not jointly and severally liable, and where delay is necessary to avoid an inherently inconsistent result. <u>In re First T.D. & Investment, Inc.</u>, 253 F.3d 520, 532 (9th Cir.2001) (holding that default judgment should not be entered where other there were defendants in similar transactions such that it was not logically possible that one defendant could be liable without another being liable); <u>see</u> <u>Shanghai Automation Instrument Co. Ltd v. Kuei</u>, 194 F.Supp.2d 995 1005-10 (N.D.Cal. 2001) (collecting cases and suggesting that the unifying principle is that the risk of inconsistent judgments is too high, and entry of default judgment against a defendant is inappropriate, where other answering defendants remain in the case without their liability being adjudicated, and where under the theory of the complaint, liability of all the defendants must be uniform.

It is not clear that given the posture of this action, the nature of the liability of the various parties in this case is a consideration. However, if it is, Plaintiff alleges in his declaration that Defendants Strohl and Amundson together engaged in collusion with respect to Plaintiff's initial investment; Plaintiff alleged that Strohl was acting as an agent for the Amundson Defendants in presenting the initial investment and at all other relevant times thereafter. (Decl. at ¶ 1.) The initial representation was that Strohl represented that he and the Amundson Defendants would invest the funds in various off-shore concerns that would act as a tax-shelter and provide a rate of return of five per cent per month, and that the investment could be cancelled. (Id. at ¶ 2-3.) The initial investment was tendered to Strohl and Amundson together.(Id. at ¶ 4.)

The complaint is consistent, containing allegations that each Defendant was the agent and co-conspirator of each other and in taking actions alleged in the complaint was acting within the course and scope of the agency and conspiracy. (Complt. at ¶ 10.) Plaintiff gave the initial investment to Strohl, who in turn transferred it to Defendants Amundson. (Id. at ¶ 13.) It was Amundson, however, who prepared and sent the May 14, 2001 agreement to bind the initial investment for another year with a six per cent monthly return, and to return the initial $102,000 principal by May 13, 2002. (Id. at 15.) Both Amundson and Strohl are alleged to have failed to have responded to Plaintiff's demands for return of the principal, and to have given excuses. (Id. at 17-20.) The allegations of the various claims with respect to the conduct of the defendants, whether relating to the

1999 initial investment, or the 2001 representations, are made in terms of the "Defendants" plural. (Id. at ¶¶ 22 -27 (fraud claim), ¶¶ 28-33 (negligent misrepresentation), ¶¶ 34-39 (promise without intent to perform), ¶¶ 47-51 (conversion), ¶¶ 52-57 (breach of fiduciary duty), and ¶¶ 58-67 (RICO). The contract claim is slightly different in that it is based on the May 2001 agreement which Amundson is alleged to have drafted and breached. However, that claim incorporates the allegations of joint action, conspiracy, agency, and fraudulent intent alleged in the general paragraphs of the complaint (¶ 42), and it depends upon some of the same conduct and factual transactions as the other claims, namely, misrepresentations in connection with the 2001 agreement regarding investment, monthly returns, and ultimate return of principal. It differs only in that the breach of contract action does not require proof of the actions of the Defendants in 1999 or of fraud or wrongful intent in order to establish a right to recover. Nevertheless, by virtue of the incorporation of the allegations of agency and conspiratorial action in the claim, it appears that all defendants are alleged to have participated in the formation and breach of contract jointly.

Thus, if the nature of the liability is considered, it is not true, as Plaintiff asserts, that there is no risk of logically inconsistent adjudications as to liability. Tortfeasors who are alleged to have conspired and to have both acted with intent are jointly liable for the alleged torts regardless of the degree of their individual activity. Revert v. Hesse, 184 Cal. 295, 301 (1920); Kesmodel v. Rand, 119 Cal.App.4th 1128, 1141-43 (2004). With respect to the contract action, all rights and

liabilities that accrue to an agent from transactions the agent

enters into on his own accrue to the principal. Cal. Civ. Code §

2330. Even if the principal is undisclosed in a contract,

ordinarily either the principal or agent may be held liable on

the contract. Marr v. Postal Union Life Ins. Co., 40 Cal.App.2d

673, 678-79 (1940). Thus, the liability of the Defendants in this

case is joint or dependent.

Here, however, there are no other answering defendants;

Defendants Strohl and Strohl Financial Services, the other

defendants, have not answered, and indeed, default has been

entered against those defendants. A motion to set aside default

has been filed based on the Court's entry of default being void

due to the pendency of a bankruptcy proceeding of which the Court

had no notice. However, this motion was taken off calendar and

was not re-noticed by Defendant Strohl after the cessation of the

bankruptcy stay. The Court takes judicial notice of the filing in

this action of a copy of the bankruptcy court's order of June 9,

2003, in which the bankruptcy court annulled the automatic stay

imposed by 11 U.S.C. § 362 as of August 16, 2002, through the

date of the order, and validated all actions taken by the Court

in this action, including the Clerk's entry of the default of

Defendant Strohl in December 2002 and the subsequent application

for default judgment in 2003. (Doc. 51 and attachments filed in

this action on July 14, 2003.)

In summary, it is not clear that there is any risk at all of

inconsistent judgments because at this point, there is no other

answering defendant, and no defenses have been interposed by any

other defendant. There is at most a bare logical possibility that

31

Defendant Strohl will have his default set aside and will interpose defenses at some time after the voluntary stay in this action is dissolved. However, there is no real likelihood of this because the basis of the motion to set aside default appears to have been undercut by the action of the bankruptcy court in annulling the automatic stay and validating the actions which Defendant Strohl claimed were void due to the automatic bankruptcy stay.

There does not appear to be any other basis for delay. Plaintiff argues that in view of Defendant Strohl's multiple bankruptcies (of which the Court takes judicial notice from its own docket)[3], and considering the criminal proceedings, the Plaintiff's chance of recovering from Defendants Strohl is slim; Defendants Amundson are the best chance of recovery for Plaintiff's loss, and thus Plaintiff would be prejudiced if relief is denied. Further, Defendants have engaged in manipulation or have been responsible for undue and lengthy delays in the resolution of this case.

Defendant Wesley Amundson has submitted opposition in which he revisits his argument made on the motion to set aside his default to the effect that he believed that he was being represented by Mr. Nunez when his default was entered and thereafter; he submits a declaration to the effect that he was led to believe that the matter was being taken care of; however,

---

[3]The Court may take judicial notice of court records. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

this argument has been considered on the motion to set aside the default, and the Court's ruling on that motion was not the subject of a motion for reconsideration before the District Judge. The time for Mr. Amundson to submit a statement of facts regarding such matters has passed.

Likewise, Amundson's declaration to the effect that he merely tried to help Plaintiff recoup lost funds and had no fraudulent intent is not within the scope of permissible input. The scope of a defaulting defendant's participation in a motion for default judgment is quite limited. Defendant is barred from disputing the facts alleged in the complaint because averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Fed. R. Civ. P. 8(d); Fed. R. Civ. P. 55(b). Defendant's input does not go to the legal sufficiency of the allegations of the complaint, which include allegations of fraud, or to the appropriate sum of actual damages.

Accordingly, it is concluded that there is no just reason for delay, and the Clerk should be directed to enter judgment in favor of Plaintiff against Defendants Amundson.

III. <u>Recommendation</u>

Accordingly, it IS RECOMMENDED that:

1. Plaintiff's motion for entry of a default judgment BE GRANTED; and

2. The Clerk BE DIRECTED to enter judgment in favor of Plaintiff Jesus Albizu, and against Defendants Wesley E. Amundson and Amundson and Associates, for $157,880.00 in damages; prejudgment interest at the rate of ten per cent per annum from

1    May 13, 2002; punitive damages in the sum of $306,000.00; and

2    treble damages in the amount of $306,000.00.

3        This report and recommendation is submitted to the United

4    States District Court Judge assigned to the case, pursuant to the

5    provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

6    Local Rules of Practice for the United States District Court,

7    Eastern District of California. Within thirty (30) days after

8    being served with a copy, any party may file written objections

9    with the Court and serve a copy on all parties. Such a document

10   should be captioned "Objections to Magistrate Judge's Findings

11   and Recommendations." Replies to the objections shall be served

12   and filed within ten (10) <u>court</u> days (plus three days if served

13   by mail) after service of the objections. The Court will then

14   review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

15   (b)(1)(C). The parties are advised that failure to file

16   objections within the specified time may waive the right to

17   appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d

18   1153 (9th Cir. 1991).

19

20   IT IS SO ORDERED.

21   **Dated:    November 10, 2005**            **/s/ Sandra M. Snyder**
        icido3                                              UNITED STATES MAGISTRATE JUDGE